United States Court of Appeals,

Eleventh Circuit.

No. 95-8594.

SOFTBALL COUNTRY CLUB—ATLANTA, a Texas Joint Venture, Lowell C. Douglas and Richard D. Tinsley, Plaintiffs-Appellants, Cross-Appellees,

v.

DECATUR FEDERAL SAVINGS AND LOAN ASSOCIATION, Defendant-Appellee, Cross-Appellant.

Sept. 10, 1997.

Appeals from the United States District Court for the Northern District of Georgia. (No. 1:87-cv-2817-RCF), Richard C. Freeman, Judge.

Before COX, Circuit Judge, KRAVITCH, Senior Circuit Judge, and STAGG*, Senior District Judge.

KRAVITCH, Senior Circuit Judge:

Softball Country Club—Atlanta, a joint venture, and two of its principals, Lowell C. Douglas and Richard D. Tinsley, (collectively, "Plaintiffs") assign error to the district court's: (1) order granting judgment as a matter of law ("JML") to Decatur Federal Savings and Loan Association ("Decatur Federal")[1] on Plaintiffs' claim for attorneys' fees; and (2) limitation of Plaintiffs' presentation of evidence and argument during the punitive damages phase of the trial of this case. Decatur Federal cross-appeals the district court's denial of Decatur Federal's motion for JML on Plaintiffs' claims for breach of an oral contract, fraud and punitive damages. We affirm the district court, except as to its ruling on attorneys' fees; on that issue, we reverse and render judgment for Plaintiffs.[2]

I.

---

*Honorable Tom Stagg, Senior U.S. District Judge for the Western District of Louisiana, sitting by designation.

[1]Although First Union National Bank of Georgia acquired Decatur Federal during the pendency of this suit, the parties and the district court referred to the defendant-appellee/cross-appellant as "Decatur Federal" throughout the litigation. For consistency, hereinafter, we follow that approach.

[2]Plaintiffs' motion to strike portions of Decatur Federal's reply brief, previously carried with the case, is DENIED.

This case arises from a dispute over the financing of a resort construction project. In particular, it revolves around Plaintiffs' contention that Decatur Federal, through one of its agents, orally agreed to lend Plaintiffs $300,000, in exchange for Plaintiffs' promise to repay an existing larger debt they owed Decatur Federal as soon as Plaintiffs secured refinancing and to assign billboard rental income to Decatur Federal. Plaintiffs insist that they met their duties under this oral agreement, but that Decatur Federal did not.

At trial, Plaintiffs pursued four substantive claims: (1) breach of the initial loan contract; (2) breach of the oral loan agreement; (3) fraud in connection with the oral contract; and (4) conversion of billboard rental checks. The jury found for Plaintiffs as to their claims for breach of the oral contract and fraud. It also determined that Decatur Federal exhibited sufficient bad faith and willfulness for Plaintiffs to recover attorneys' fees and punitive damages. The jury then awarded Plaintiffs compensatory damages of $2,000 and $5,592 for Decatur Federal's breach of the oral contract and fraud, respectively, attorneys' fees of $226,870.50 (apportioned equally between the two substantive claims on which Plaintiffs prevailed) and $185,000 in punitive damages.[3]

Decatur Federal then filed, pursuant to Fed.R.Civ.P. 50(b), a motion for JML on all matters decided by the jury in Plaintiffs' favor. The district court denied that motion as it related to the verdicts for Plaintiffs on their claims for breach of the oral contract, fraud and punitive damages, but it granted JML to Decatur Federal on the attorneys' fees award. Plaintiffs then moved under Fed.R.Civ.P. 59(e) for the district court to alter or to amend its judgment on that latter issue, and the district court denied their motion.

II.

---

[3]The jury found for Decatur Federal on Plaintiffs' claims for breach of the original loan contract and conversion. Plaintiffs do not contest the judgments entered upon those verdicts.

In 1984, Plaintiffs secured a $2,500,000 loan from Decatur Federal to construct a resort.[4] After Plaintiffs fell behind in their loan payments, they sought further financing to pay off Decatur Federal and to complete the project. Plaintiffs found that they likely could borrow $3,250,000 from American National Insurance Company ("American National"), but that they would require an additional $300,000 loan to satisfy their existing obligations. In late September and early October of 1987, Plaintiffs discussed their needs with Gordon Skeen, a loan officer at Decatur Federal. They contend that Skeen orally agreed that Decatur Federal would lend Plaintiffs the balance they sought after Plaintiffs retired their existing debt. In return, Plaintiffs promised to pay off the original loan immediately after they secured refinancing from American National and to assign to Decatur Federal the rental income from certain billboards.[5] Based upon this understanding, Plaintiffs decided to pursue refinancing through American National.

On October 30, 1987, Decatur Federal demanded that Plaintiffs pay the accelerated balance of their original loan by November 30, 1987. On that deadline, Plaintiffs closed their loan with American National and paid Decatur Federal a negotiated sum in full satisfaction of the existing debt. Plaintiffs also made billboard rental payments to Decatur Federal in the final two months of 1987 and the first month of 1988, but Decatur Federal declined to provide the $300,000 loan to Plaintiffs.

III.

We begin with Decatur Federal's cross-appeal because its disposition could moot other issues in the case. Decatur Federal asserts that the district court erred when it refused to grant JML

---

[4]Plaintiffs' appeal of the district court's order overturning the jury's verdict as to attorneys' fees and Decatur Federal's challenge to the judgment entered for Plaintiffs on their claims for breach of oral contract, fraud and punitive damages relate to the district court's disposition of Decatur Federal's motion for JML. Accordingly, "we consider the evidence, and state the facts in this part of the opinion, in the light most favorable to [Plaintiffs, as the non-movants]." *Marriott Corp. v. Dasta Constr. Co.,* 26 F.3d 1057, 1059 n. 1 (11th Cir.1994).

[5]Decatur Federal maintains that the parties failed to agree on material terms for the second loan, and that the proposed deal also called for Plaintiffs to transfer to Decatur Federal an interest in the real property upon which their billboards stood.

against Plaintiffs on their claims for breach of an oral contract, fraud and punitive damages because: (1) the parties never made definite the material terms of the oral agreement; and (2) the oral contract, if sufficiently definite, called for a transfer of real property which neither occurred, nor could have. According to Decatur Federal, this latter point undermines Plaintiffs' substantive claims on consideration, statute of frauds and promissory fraud grounds.[6] This court reviews *de novo* the district court's ruling on a motion for JML, and applies the same standard as did the district court. *See Daniel v. City of Tampa, Florida,* 38 F.3d 546, 549 (11th Cir.1994), *cert. denied,* 515 U.S. 1132, 115 S.Ct. 2557, 132 L.Ed.2d 811 (1995). In this context, the district court could have granted the motion "only where reasonable people could not have reached the verdict in question." *Overseas Private Investment Corp. v. Metropolitan Dade County,* 47 F.3d 1111, 1113 (11th Cir.1995).

Our review confirms the district court's conclusion that the record contains conflicting evidence on the key issues underlying Decatur Federal's arguments regarding contract formation and the role of real estate in the deal. Specifically, both Douglas and Tinsley testified on direct examination that the parties agreed on material terms for the $300,000 loan and they did not list a real estate transfer among the conditions. Moreover, portions of Skeen's testimony supported that view. Although Decatur Federal's cross-examination of Tinsley and its own evidence could have supported a finding by the jury that Plaintiffs failed to show a meeting of the minds as to the oral contract or that the deal contemplated a conveyance of real estate, the record does not compel such findings. Accordingly, viewed in the light most favorable to Plaintiffs, the evidence adduced at trial and all proper inferences therefrom, afforded the jury a reasonable basis to resolve these disputed matters in Plaintiffs' favor; thus, the verdicts must stand.

IV.

---

[6]Decatur Federal correctly observes that if Plaintiffs' fraud claim fails, their subsidiary punitive damages claim fails as well.

4

Plaintiffs assign error to the district court's conduct of the punitive damages phase of the trial and its decision to grant JML to Decatur Federal on Plaintiffs' claim for attorneys' fees. We consider in turn these distinct aspects of Plaintiffs' appeal.

A.

Plaintiffs contend that the district court reversibly erred when it excluded: (1) evidence of the financial status of the lending institution which purchased Decatur Federal prior to trial; and (2) deposition testimony from Decatur Federal's late former chairman. To resolve these assignments of error, we first must determine the proper standard of review. Plaintiffs assert that this court should not evaluate the district court's exclusion of evidence under the abuse of discretion standard generally applicable to such rulings. Instead, they insist that this dispute involves the district court's interpretation of Georgia's punitive damages statute, and that, therefore, we should review *de novo* the district court's action in this regard.

Under Georgia law, in cases involving punitive damages, a trial court should "receive such evidence *as is relevant* to a decision regarding what amount of damages will be sufficient to deter, penalize, or punish the defendant *in light of the circumstances of the case ...*" O.C.G.A. § 51-12-5.1(d)(2) (emphasis added). In our view, this statute, read reasonably, vests trial courts with discretion to control litigants' presentation of evidence during the punitive damages phase of a trial in the same manner that courts regulate evidentiary matters generally. The district court correctly construed Georgia law to endow it with such authority, and therefore, we need only review for abuse of discretion the district court's discretionary decisions regarding the proffered material at issue.

Plaintiffs argue that the district court should not have limited them to presenting evidence of Decatur Federal's financial condition when it committed the acts which the jury found tortious, rather than of the net worth of First Union National Bank of Georgia, the entity which owned Decatur Federal at the time of trial. According to Plaintiffs, this limitation undermined the deterrence goals set forth in Georgia's punitive damages statute. We do not doubt that in some cases, such as where a party commits a tort while judgment-proof, but becomes wealthy by the date of trial,

5

a tortfeasor's financial condition at the later, rather than the earlier, date might be relevant on deterrence grounds under Georgia law. In this case, however, Plaintiffs' vague proffer regarding its desire to question a First Union official does not appear clearly analogous to the above-posited hypothetical, or necessarily calculated to serve the other interests identified in Georgia's punitive damages statute. As a result, we conclude that, "in light of the circumstances of th[is] case," *id.,* the district court did not abuse its discretion by ruling as it did.

Plaintiffs further contend that the district court wrongly sustained Decatur Federal's objection to the admission of its late former chairman's deposition in which he stated that an adverse judgment of $30,000,000 would not have a "material impact" on Decatur Federal's financial condition. Plaintiffs sought to introduce this testimony to show "what amount of damages will be sufficient to deter, penalize, or punish," *id.,* Decatur Federal. The deponent made the statement in question in response to Plaintiffs' examination of him about a formal notice to potential investors regarding the instant litigation. According to Decatur Federal, the phrase, "material impact", as used by the deponent in that context, constitutes an accounting term of art. Decatur Federal's clarification of this point and Plaintiffs' rebuttal thereto likely would have led to a mini-trial on collateral matters that might have confused the issues before the jury, and surely would have taken significant time. As a result, we find no abuse of discretion by the district court in its disposition of this evidentiary question.[7]

B.

The district court granted Decatur Federal's post-verdict motion for JML on Plaintiffs' claim for attorneys' fees and vacated the related portion of the jury's award. In so doing, it held that Plaintiffs failed to introduce sufficient evidence to allow the jury to award attorneys' fees related to the specific claims upon which Plaintiffs prevailed. Plaintiffs assign error to this ruling because they maintain that: (1) Decatur Federal failed to preserve this argument; (2) the record supports the

---

[7]Plaintiffs also assert that the district court reversibly erred by limiting their counsel's closing argument on punitive damages. We reject this contention. *See* 11th Cir. R. 36-1.

jury's verdict; and/or (3) the district court should have held an evidentiary hearing to determine the proper fee amount. As noted above, we review *de novo* a district court's ruling on a motion for JML. *See Daniel,* 38 F.3d at 549.

Under Georgia law, a party may recover attorneys' fees if it prevails on a substantive claim and the fact-finder discerns that the opposing party acted in "bad faith concerning the transactions and dealings out of which the cause of action arose." O.C.G.A. § 13-6-11. The jury found such bad faith by Decatur Federal in connection with Plaintiffs' breach of oral contract and fraud claims and awarded attorneys' fees to Plaintiffs. The district court granted Decatur Federal's post-verdict motion for JML as to attorneys' fees on the ground that Plaintiffs' proof failed to differentiate between attorneys' fees associated with successful and unsuccessful claims, and that this failure doomed the jury's award under *Southern Cellular Telecom v. Banks,* 209 Ga.App. 401, 433 S.E.2d 606 (1993) (reversing attorneys' fees award where record "fail[ed] to demonstrate the function or substance of the task [performed by plaintiff's attorney] with sufficient particularity to permit the court to distinguish between time and expenses attributable to the successful fraud claim and time and expenses attributable to [the nine] other unsuccessful claims"). *See also United Companies Lending Corp. v. Peacock,* 267 Ga. 145, 147, 475 S.E.2d 601, 602-03 (1996) (citing with approval *Southern Cellular* court's ruling on allocation of attorneys' fees under O.C.G.A. § 13-6-11).

Plaintiffs insist that the district court erred in so ruling because Decatur Federal neglected to move for JML at trial on that basis. If Plaintiffs correctly characterize Decatur Federal's actions, under settled law, Decatur Federal could not secure JML based on the allocation argument after the jury's verdict. *See Austin-Westshore Const. Co., Inc. v. Federated Dept. Stores, Inc.,* 934 F.2d 1217, 1222 (11th Cir.1991) ("Parties who fail to raise certain issues in their motion for directed verdict are precluded from raising such issues in their JNOV motion.").[8] Decatur Federal responds that it

---

[8]Prior to their amendment in 1991, the Federal Rules of Civil Procedure referred to motions for JML made at trial as motions for directed verdict, and post-verdict motions for JML as motions for judgment notwithstanding the verdict ("JNOV"). Decatur Federal does not contend that *Austin-Westshore* or other cases from this court decided prior to the 1991 amendment concerning the preservation of issues for post-verdict motions now lack precedential force.

preserved this argument when, as part of its motion for JML at the close of Plaintiffs' case, it adopted the district court's stated concern about Plaintiffs' failure to prove allocable attorneys' fees, and then renewed that motion after the close of all the evidence.[9]

The record reflects the following: At the close of Plaintiffs' case, as Decatur Federal's counsel began to argue in support of a motion for JML, the district court interjected that it saw "right at the very beginning there is just an absolutely major problems [sic] on the attorneys' fees question."[10] Decatur Federal's counsel agreed that "attorneys' fees should come out." The district court continued: "*They haven't been broken down.* We don't know whether there has been any work done. I haven't seen the time sheets. Does the time sheet show what each attorney did in the case?"

Plaintiffs' counsel and the district court then discussed whether the time sheets admitted during Plaintiffs' case showed the discrete tasks that Plaintiffs' attorneys had performed. The district court next cited the case of *Norman v. Housing Authority of the City of Montgomery,* 836 F.2d 1292 (11th Cir.1988), and questioned whether, in light of that authority, Plaintiffs' failure to call an outside attorney to testify in support of their fee request undermined their claim. Plaintiffs' counsel replied that *Norman* dealt with federal law and that under Georgia law his testimony could establish the propriety of the claim. At no time in this dialogue, did the district court intimate, let alone expressly state, that, to support an award under O.C.G.A. § 13-6-11, Plaintiffs' evidence had to show what attorneys' fees related to particular claims before the jury.

---

[9]At oral argument, Decatur Federal also contended for the first time that Plaintiffs waived their own waiver argument by failing to raise it in the district court in response to Decatur Federal's post-verdict motion for JML. Because Plaintiffs have not had an adequate opportunity to address this matter, pursuant to well-established authority, we decline to entertain it. *See, e.g., Bigby v. United States Immigration and Naturalization Serv.,* 21 F.3d 1059, 1063 n. 6 (11th Cir.1994); *United States v. Tremble,* 933 F.2d 925, 928 (11th Cir.), *cert. denied,* 502 U.S. 928, 112 S.Ct. 346, 116 L.Ed.2d 285 (1991).

[10]This quotation and the other quoted passages herein come from one of the following locations within the record: R18-723-726 (hearing following close of Plaintiffs' case), R21-1154-1243 (hearing at close of evidence), R22-1255-1296 (charge conference prior to oral argument) and R22-1334-1373 (jury charge and exceptions). For ease of reading, we do not include pin cites for individual quotations. The court has added any emphasis that appears within the quoted portions of the record.

Decatur Federal's counsel then resumed his argument as follows: "While [the district court] brought up attorneys' fees, let me just state *the other ground besides what the court has recognized* why we think they should be out of the case, and that is there is not any evidence of bad faith in this case." Decatur Federal's counsel concluded his discussion of attorneys' fees by reiterating that "*for the reason the court has indicated* plus the *Glen Restaurant* case [which covers the bad faith requirement], we don't think there is any evidence of bad faith in the case ... and that, therefore, attorneys' fees should come out of the case." After further argument on other aspects of Decatur Federal's motion, the district court reserved ruling and expressly provided that Decatur Federal should renew its motion at the close of all the evidence.

Pursuant to that directive, after both sides rested, Decatur Federal's counsel offered that "[w]e'd like to renew our motion *as made earlier;* and unless the court desires, I was not going to go through all those points one by one...." The district court suggested that Decatur Federal's counsel "summarize what [he] argued the first time." Over the next 50 transcribed pages of the hearing, attorneys for both sides and the district court went back and forth over the numerous purported failures of proof Decatur Federal identified as to Plaintiffs' substantive and punitive damages claims. On three separate occasions during this extended interchange, the district court specifically referred to attorneys' fees. First, it noted that punitive damages were "an issue" for the hearing as were "[m]aybe attorneys' fees." Next, the district court stated that: "We've got left, seems to me, the matter of the attorneys' fees and [sic] matter of punitive damages." Finally, it commented that "attorneys' fees, I assume, on the bad faith question, are still in the case."

Despite these invitations, Decatur Federal's counsel never mentioned attorneys' fees, let alone the specific argument that Plaintiffs failed to present evidence from which the jury properly could allocate attorneys' fees to particular substantive claims. In the face of Decatur Federal's counsel's silence on this issue, Plaintiffs' counsel pointedly asked for a ruling on the status of Plaintiffs' claim for attorneys' fees, and the district court responded that "attorneys' fees are in the case still, yes sir."

9

At that juncture, the district court deemed the hearing on Decatur Federal's motion over and requested that the parties address jury instructions and the verdict form.

Decatur Federal argues that, by stating that Plaintiffs' attorneys' fees "haven't been broken down," the district court raised the issue of Plaintiffs' failure to prove allocable attorneys' fees. Read in isolation, that phrase might support such a construction. Taken in context, however, the district court's statement can be interpreted most reasonably to reflect its concern for whether the time sheets introduced by Plaintiffs were "broken down" in such a fashion that the jury could determine the reasonableness of the time spent by Plaintiffs' attorneys. As a result, in our view, Decatur Federal did not adopt the per claim allocation issue when it moved for JML on "the other ground besides what the court has recognized" or "for the reason the court has indicated." Even if these phrases qualify as an adoption of issues actually raised by the district court, they fail to preserve arguments which the opposing party reasonably might not have understood the district court to have made. By extension, Decatur Federal's general renewal of its JML motion at the close of all the evidence also did nothing to save the allocation argument, particularly given Decatur Federal's counsel's failure to respond to the district court's repeated cues throughout the hearing regarding attorneys' fees.

From the two hearings on its motion for JML, Decatur Federal thus can point only to "speculation" regarding the allocation issue. *Quinn v. Southwest Wood Prods., Inc.,* 597 F.2d 1018, 1025 (5th Cir.1979). Such a showing will not suffice;  instead, Decatur Federal must preserve its arguments "on the record in an unambiguous formal motion for relief." *Id.* Although Decatur Federal's citations to the hearings on its motion for JML do not defeat Plaintiffs' waiver contention, as the *Quinn* court observed, "courts have taken a liberal view of what constitutes a motion for directed verdict for these purposes." *Id.* Accordingly, we also will review the record of the charge conference to determine whether Decatur Federal lodged a request in that proceeding that, although not styled as a motion for JML, served the same purpose in that it conveyed a definitive, clear objection to the presentation of the attorneys' fees question to the jury. *See id.* (ruling that defendant's formal objections to jury charge constituted unambiguous challenge to sufficiency of

10

evidence and, thus, preserved later JNOV motion on that point). *See also Splitt v. Deltona Corp.,* 662 F.2d 1142 (Former 5th Cir.1981) (affirming grant of JNOV as to punitive damages because defendant formally objected on record to jury charge on punitive damages on same ground).

Over the first 30 transcribed pages of the charge conference the parties discussed various issues, but not attorneys' fees. Ultimately, however, the district court, in rejecting Plaintiffs' verdict form, stated that "you need a special interrogatory, I think, to show, you know, how the jury found as to each of the three counts.... [O]n the attorneys' fees, I think, likewise, you're going to have to probably allow the jury to make an award of attorneys' fees as it relates to each theory or one count." The district court then recalled that Plaintiffs' counsel had indicated that his "time sheets show the lawyer who did the work ... as well as the type of work, what it was on there." It reasoned that "the jury could determine from that, if they will ... as to *how much relates to each count ....*" The district court concluded by warning that Plaintiffs risked reversal "if [their counsel] d[id]n't ask the jury at least to try to figure out how much goes to each count." This reference constitutes the first introduction of the allocation issue into the case.

Notwithstanding this opening, however, Decatur Federal's counsel offered no comments on attorneys' fees generally or the allocation issue in particular, and the district court turned to another matter. Three transcript pages later, the district court informed Decatur Federal's counsel that "[i]nstead of shaking your head, you better stand up and say something...." Decatur Federal's counsel replied that he would "say a couple of things," and this colloquy followed:

> [Decatur Federal's counsel]: Yes, sir. I don't know how in the world the jury in this case is going to break down attorneys' fees based on counts, which was part of our original motion for directed verdict as to attorneys' fees.
>
> The court: I don't know that they'll be able to break it down as far as the [specific compensatory damage allegations]. I don't know if they can do that. But I think they can break it down as to breach of the original contract, breach of the oral contract, and conversion.
>
> [Decatur Federal's counsel]: I think they can do that, too. *Whether they can turn around and break down attorneys' fees based upon that, I don't think they can do it based upon the evidence before this court because there has been no testimony or evidence,* as I earlier pointed out in [sic] directed verdict, as to how in the world these relate to these counts. That's my *concern.*

11

The court:  That's what [Plaintiffs' counsel] told me, he's got those time sheets that are in evidence showing the name of the person doing the work.

[Decatur Federal's counsel]:  Right.

The court:  And the case that was involved.  They can do that.

[Decatur Federal's counsel]:  But I don't think they show time spent working on interrogatories related to [sic] conversion claim.  I think it just says spent time working on interrogatories.

The court:  I don't know.  But you better prepare something, [Plaintiffs' counsel], in your argument to the jury so that they will have something to hang on to.

[Plaintiffs' counsel]:  Yes, sir.

The court:  And [sic] better make extensive use of that blackboard ...

[Decatur Federal's counsel]:  Okay. That's not in evidence, your honor.  That's argument. That's our whole point.

The court:  I know that.  No, but what I'm saying is based on evidence.  He says that he's got his time sheets that show the information that the jury would need in putting a value as to attorneys' fees on each of those claims.

[Decatur Federal's counsel]:  Right.

The court:  So what I'm telling him, [sic] that rather than just relying on the jury to go back in the jury room and look at those documents and come up with a figure, he'd better do some work for them so he can tell them it's all here in this big box and you can take it back and you can look at it and, when you look at it, it will come up with "X" number of dollars for this and "X" number of dollars for that and "Y" number of dollars for the other.

[Decatur Federal's counsel]:  All I'm saying is *that's exactly what he should have done as part of the evidence in the case,* which is why we moved for a directed verdict.

The court:  I understand.

[Decatur Federal's counsel]:  That's another concern.

This passage represents Decatur Federal's first explicit reference to allocation.  Expressing interest, or in the words of Decatur Federal's counsel, "concern", for an issue, however, is not the same as objecting or demanding judgment.  At no point during this exchange did Decatur Federal's counsel formally reassert the argument he believed he had made earlier as a basis for the district court to grant judgment for Decatur Federal.  An attorney's mistaken belief that he had raised an argument previously cannot substitute for an actual, record objection.  The representations of

12

Decatur Federal's counsel at the charge conference, therefore, did not preserve Decatur Federal's right to assert a post-verdict motion for JML based on the alleged inadequacy of Plaintiffs' proof of allocable attorneys' fees.

Decatur Federal's counsel's subsequent conduct further confirms that Decatur Federal waived the allocation issue. At the end of the charge conference, the district court requested that the parties resubmit proposed verdict forms the next morning. Both sides complied with that request and, thereafter, appeared before the district court to finalize matters before closing arguments began that afternoon. Despite the "concern" Decatur Federal's counsel expressed the previous day about the lack of evidence to support an allocation of attorneys' fees, the new draft verdict form he presented to the district court provided for the jury to award attorneys' fees for each substantive cause of action.

In discussing this aspect of the verdict form, Plaintiffs' counsel cited two cases for the proposition that, under Georgia law, juries need not apportion attorneys' fees between claims in all cases. The district court asked if Decatur Federal's counsel wished to be heard on the matter, and he declined because he said he had not read the cited cases. The district court indicated that Decatur Federal, not the district court, was obligated to test the merits of Plaintiffs' position on this matter. Decatur Federal's counsel, thereupon, stated that he "was going on [sic] based on what the court said yesterday."

Plaintiffs' counsel then questioned the judge as to how he should argue the matter of attorneys' fees to the jury. The district court indicated that its staff would continue researching the question while arguments proceeded and that the parties could tell the jury that they would receive instructions regarding how to evaluate Plaintiffs' claim for attorneys' fees. Again, Decatur Federal's counsel took no position on the issue. The question of attorneys' fees finally came to a head during Plaintiffs' closing argument, when the district court apparently received a message. At the bench conference that followed, the district court instructed the parties to read whatever it had been handed. Plaintiffs' counsel and the district court then began to discuss the requirement that the jury

13

allocate attorneys' fees on a claim-by-claim basis. Plaintiffs' counsel insisted that the jury could

make the necessary determination from the time records and the following colloquy ensued:

> The court: I guess they can do that.

> [Decatur Federal's counsel]: That was the whole reason for my motion for directed verdict.

> The court: Huh?

> [Decatur Federal's counsel]: That was my whole reason for [sic] motion for directed verdict, they are not broken down. His document is not broken down.

> The court: I know you mentioned that on motion for directed verdict but I told you, if you'll recall, [Plaintiffs' counsel] told me they are broken down. I don't know if they are broken down.

> [Plaintiffs' counsel]: I want to make sure you understand. They are itemized per task per minute ...

> The court: Well, what I'm trying to find out is this. You've got Count A, Count B, Count C, and Count D. As a task was done, did Lawyer One put here, five hours?

> [Plaintiffs' counsel]: Yes.

> The court: Put here on Count C, two hours.

> [Plaintiffs' counsel]: Oh, no. No. What it says, you know, say on January 5th, I did research on the question of whether or not there is—what the elements are of a fraud claim ... This would be our position, Judge, the things that are clearly what aren't in the case anymore, the Bank Holding Company Act claim, those have been X'd.

The district court then examined some of the time sheets and questioned whether charges

associated with claims no longer in the case remained in those exhibits. Plaintiffs' counsel reminded

the district court that he had "testified during the direct part of [Plaintiffs'] case that all of the fees

which were incurred and represented in those bills were reasonable and necessary to the prosecution

of this case, and none of those, none of that testimony was cross-examined by [Decatur Federal]."

The district court responded, "I agree, [Decatur Federal's counsel] didn't do it. I'm the one who

asked the questions." The district court then suggested that Plaintiffs' counsel prepare another

request to charge on the issue and show it to Decatur Federal's counsel. It stated that, thereafter, it

would hold a final hearing on what charge to give.

14

Following closing arguments, the district court sent the jury out and indicated to the parties that it intended to amend the jury charge on attorneys' fees based on the *Southern Cellular* case. Decatur Federal's counsel offered no argument in response. The district court then physically altered the charge to state that the jury "should determine from the evidence whether and in what amount ... and as precisely to what claim the attorneys' fees requested are to be allowed...." It also adopted a verdict form with separate provisions for attorneys' fees as to each cause of action, consistent with Decatur Federal's earlier proposal. The district court recalled the jury and instructed them. After the jury exited the courtroom, the district court invited final objections, and Decatur Federal's counsel stated that "we would except generally to the charges on attorneys' fees, punitive damages, and fraud."

This final portion of the record shows again that by the end of the trial Decatur Federal's counsel mistakenly believed that he had asserted the allocation argument in a timely and proper fashion. It also suggests that the district court may have shared that view. These facts and/or inferences, however, do not constitute the kind of action or representation necessary to preserve an argument for post-verdict motions. Decatur Federal failed to inform Plaintiffs in an unambiguous manner that it demanded judgment based on Plaintiffs' failure to prove allocable attorneys' fees. "[O]rderly and definite procedural steps are necessary to sharpen the issues before the court and to avoid misunderstanding. While it is true that this Circuit has not been strict about motions for directed verdict, we cannot depart completely from Rule 50(b)." *Sims' Crane Serv., Inc. v. Ideal Steel Prods., Inc.,* 800 F.2d 1553, 1557 (11th Cir.1986). As a result, the district court's order granting Decatur Federal's post-verdict motion for JML as to Plaintiffs' claim for attorneys' fees cannot stand.[11]

V.

---

[11]Because we agree with Plaintiffs' waiver argument, we do not reach, and express no opinion as to, their other contentions regarding attorneys' fees under O.C.G.A. § 13-6-11.

For these reasons, the district court's order denying Decatur Federal's motion for JML as to Plaintiffs' breach of oral contract, fraud and punitive damages claims is AFFIRMED and its rulings during the punitive damages phase of the trial of this case challenged by Plaintiffs are AFFIRMED. The district court's order granting Decatur Federal's post-verdict motion for JML as to Plaintiffs' claim for attorneys' fees is REVERSED, and judgment in the amount of $226,870.50, apportioned equally between Plaintiffs' claims for breach of an oral contract and fraud, is RENDERED for Plaintiffs.