A96A2411. SOUTHERN WATER TECHNOLOGIES, INC. v. KILE.
(481 SE2d 826)

Judge Harold R. Banke.

A jury awarded Richard Van Kile unpaid sales commissions owed by Southern Water Technologies, Inc. ("SWT") interest, and attorney fees. SWT enumerates five errors, primarily challenging the use of two special verdict forms and the denial of its motions for directed verdict.

Kile, a professional engineer, began working in 1989 for SWT, a sales company representing manufacturers of equipment for wastewater and water treatment plants. Kile's written employment contract dated April 5, 1989, his starting day, provided that in addition to a monthly base salary, Kile would be "entitled to a commission amounting to 50% of future commissions received by the Company on account of that calendar year for commissions in excess of $65,000 paid to Company as a result of your efforts. Commissions will be payable quarterly on monies received in the previous quarter." SWT's president John S. "Chip" Allen III admitted at trial that this same salary/commission agreement had been reconfirmed each year that Kile worked for SWT.

Kile worked for SWT in 1992 and booked 1992 sales orders.[1] After Kile sought commissions from SWT for jobs he sold in 1992 in excess of the $65,000 base amount, a dispute ensued. SWT adopted several stances: denying Kile's entitlement to any commissions, acknowledging Kile's entitlement to some commissions, and contending that the salary/commission agreement had been superseded by a June 10, 1992 memorandum which informed employees about SWT's new policies on commissions. According to Paragraph 10 of that memorandum, "[i]n the event of termination of employment with the Company, for whatever reason, employee's compensation shall cease, effective the termination date. Commissioned employees will receive a percentage of the commissions booked by the employee, upon receipt of these funds by the Company. Percentage will be based on project completion percentages as determined by the manufacturer involved."

Kile testified that in April 1993, management informed him verbally and in writing that he was not owed any commission for his 1992 sales and that he would not be paid. That same month, Kile claimed that he overheard Allen, SWT president, and Larry Sears, SWT vice-president, discussing whether he would be likely to sue the company if he was not paid. According to Kile, at a meeting with Allen and Sears on June 1, 1993, both Allen and Sears declared that no contract existed and Sears informed him that SWT did not owe him commissions. Kile testified that they told him that he would not be paid 1992 commissions, and if he wanted 1992 commissions he would have to sue SWT. Kile was then given the choice of retracting his May 6 letter, in which he specified the commissions SWT owed, being fired, or resigning. Following that meeting, Kile submitted his written resignation, and about one month later sued SWT to recover

---

[1] 1992 was Kile's first complete year of employment due to his active duty deployment for Operation Desert Storm between August 1990 and May 1991.

the 1992 sales commissions. After Kile filed suit, SWT made two partial payments to him totaling $10,428.37.

At trial, Allen admitted that SWT had taken the position in early 1993 that there was no binding contract between SWT and Kile governing the 1992 commissions. However, Allen acknowledged that the $65,000 trigger formula was operative for 1992 and that the same salary/commission formula had been reconfirmed every year Kile worked for SWT. Allen conceded that SWT owed Kile at least $27,880 in earned commissions at the time of the June 1 meeting. By two special interrogatories the jury found that: (1) Paragraph 10 of the June 10, 1992 memorandum did not become a part of the contract of employment between Kile and SWT, and (2) SWT had repudiated the contract of employment on June 1, 1993. *Held*:

1. SWT asserts that the trial court erred by submitting two special interrogatories to the jury. Submission of a special verdict form is a matter within the sound discretion of the trial court and absent an abuse of discretion, the court's choice will not be overturned. *Christiansen v. Robertson*, 139 Ga. App. 423, 426 (5) (228 SE2d 350) (1976) (reversed on other grounds). Here, the trial court properly submitted to the jury the threshold disputed factual issue of whether Paragraph 10 became a part of the parties' employment agreement. OCGA § 9-11-49 (a).

SWT was not entitled to a directed verdict on the issue of Paragraph 10 because there was some evidence to support the jury's verdict. OCGA § 9-11-50 (a); *Carden v. Burckhalter*, 214 Ga. App. 487, 488 (1) (b) (448 SE2d 251) (1994). Kile testified that in late 1991, Allen confirmed that the same commission arrangement would be in effect in 1992. Allen admitted that the same salary/commission formula (as initially set forth in the 1989 contract) had been reconfirmed each year. It is undisputed that Kile's assent to the memorandum containing Paragraph 10 was neither requested nor given. In the absence of evidence of mutual agreement, it cannot be said that a new contract was created. *M. W. Buttrill, Inc. v. Air Conditioning Contractors*, 158 Ga. App. 122, 124 (3) (a) (279 SE2d 296) (1981).

Nor did the trial court err in permitting the jury to decide whether SWT repudiated the contract on June 1, 1993, the day that SWT told Kile that he could resign, be fired, or retract his letter specifying the 1992 commissions. Based on the record before us, we are not able to find an abuse of discretion. *Christiansen*, 139 Ga. App. at 426 (5).

2. The trial court properly rejected SWT's contention that Kile's failure to present percentage completion evidence mandated a directed verdict. Although Paragraph 10 used a percentage of completion formula for calculating commissions, the applicable contract did not. Because the jury determined that Paragraph 10 was not in

effect, Kile was not obligated to present evidence of compliance with that paragraph.

3. The trial court did not err in refusing to direct a verdict for SWT on the issue of attorney fees. OCGA § 13-6-11 allows recovery of attorney fees if the defendant has acted in bad faith, or has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense. *A. P. S. S., Inc. v. Clary & Assoc.,* 178 Ga. App. 131 (2) (342 SE2d 375) (1986). Kile's testimony that SWT's management denied his right to commissions and told him that he would have to sue to recover them authorized attorney fees based on SWT's bad faith refusal to perform under the contract. Id.; *Walther v. Multicraft Constr. Co.,* 205 Ga. App. 815, 816 (2) (423 SE2d 725) (1992) (steadfast refusal to pay); *McDonald v. Winn,* 194 Ga. App. 459, 460 (1) (390 SE2d 890) (1990).

4. SWT contends that the trial court erred in denying its motion for directed verdict on the issue of interest. Notwithstanding SWT's argument to the contrary, Kile did not seek to recover interest on the 1992 commission amounts as each became due; instead, Kile pursued only the interest for commissions unpaid as of June 1, 1993, an amount admitted by SWT as being $27,880.[2] However, the only evidence offered as to the interest amount was Kile's testimony that the prejudgment interest total was $4,394.60. Plaintiff's Exhibit 21, reflecting how Kile calculated the interest, was not admitted into evidence. Thus, the jury's award of $1,235.50 in interest, is not supported by the record.

Moreover, the trial court erred in charging the jury that it could award the interest rate of 1.5 percent per month on a "commercial account" under OCGA § 13-6-13 because Kile's recovery was limited to the legal interest rate of seven percent under OCGA § 7-4-2 (a) (1) (A). OCGA § 7-4-16 authorizes the "owner" of a "commercial account" to charge interest on past due accounts. *Turner Constr. Co. v. Electrical Distrib.,* 202 Ga. App. 726, 727 (3) (415 SE2d 325) (1992). Kile's action against SWT is not based on a commercial account but on Kile's asserted rights under the employment contract. Prejudgment interest on Kile's breach of contract claim accrued from June 1, 1993, the date the jury determined that SWT repudiated the employment agreement. OCGA § 7-4-2; *Turner,* 202 Ga. App. at 727 (3). Accordingly, we vacate only the prejudgment interest portion of the judgment and remand for the trial court to award interest to be calculated at the rate of seven percent on $16,951.20 from June 1, 1993.

5. SWT's contention that the trial court erred by failing to sub-

---

[2] The jury apparently subtracted $10,428.37, the amount SWT paid Kile after he filed suit and subtracted $500, a travel advance, from $27,880 to arrive at $16,951.20.

mit the issue of anticipatory breach to the jury is not supported by the record. Notwithstanding SWT's claim to the contrary, the transcript shows that the trial court properly charged the jury on the concept of anticipatory breach, and properly recharged the jury on the distinction between repudiation of a contract and anticipatory breach.

*Judgment affirmed in part, reversed in part and remanded with direction. McMurray, P. J., and Ruffin, J., concur.*

DECIDED JANUARY 29, 1997 —
RECONSIDERATION DENIED FEBRUARY 19, 1997 —

*Drew, Eckl & Farnham, James M. Poe*, for appellant.
*James B. Ritchie*, for appellee.