[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
April 30, 2004
THOMAS K. KAHN
CLERK

No. 03-13266

D. C. Docket No. 98-01360 CV-CAM-1

ALPHAMED, INCORPORATED,

Plaintiff-Counter-
Defendant-Appellant,
Cross-Appellee,

versus

B. BRAUN MEDICAL, INC.,
MCGAW, INC.,

Defendants-Counter-
Claimants-Appellees,
Cross-Appellants.

Appeals from the United States District Court
for the Northern District of Georgia

**(April 30, 2004)**

Before DUBINA and HILL, Circuit Judges, and OWENS\*, District Judge.

_____
\*Honorable Wilbur D. Owens, Jr., United States District Judge for the Middle District of
Georgia, sitting by designation.

DUBINA, Circuit Judge:

After three jury trials and more than five years of heated litigation in this Georgia contract dispute, Appellant/Cross-Appellee Alphamed, Inc. ("Alphamed") appeals from the district court's amended entry of judgment, following a jury verdict in Alphamed's favor, in which the district court reduced the judgment to preclude Alphamed from recovering overhead costs that Alphamed never incurred, and reduced Alphamed's award of prejudgment interest. Appellees/Cross-Appellants B. Braun Medical, Inc. and McGaw, Inc.[1] (collectively "Braun") also appeal on the ground that the district court erred in concluding that the law of the case doctrine precluded it from granting Braun's motion for judgment as a matter of law. In the alternative, Braun contends that the district court should have permitted the jury to calculate the "gross revenues" portion of Alphamed's contractual damages and Alphamed's prejudgment interest. For the reasons that follow, we affirm the district court's entry of judgment in all respects.

I. FACTS AND PROCEDURAL HISTORY

In September 1995, the parties entered into an agreement for the manufacture and sale of ambulatory infusion pumps (the "Agreement"), which obligated Alphamed to produce 7,600 pumps over a four-year term, and to sell

---

[1]B. Braun Medical, Inc. acquired McGaw, Inc. in 1997.

them to Braun at fixed prices. Unsure of its ability to comply with the terms of the Agreement, Alphamed bargained for a default provision with a broad cure right that precluded Braun from terminating the Agreement in the event of Alphamed's default unless Alphamed failed to take "steps" to cure the default, which were to Braun's reasonable satisfaction, within thirty days of notice of default.

After more than two years of delays, Alphamed had not produced a single marketable pump, and the parties' relationship began to deteriorate. The few pumps that Alphamed produced regularly suffered from serious infirmities and regularly failed Braun's quality assurance protocols. In December 1997, Braun sent Alphamed a notice of default, alleging that Alphamed had failed to supply pumps within the time frame specified in the Agreement. While Braun assured Alphamed that it intended this notice of default to serve as a "wake up call," and withdrew it shortly thereafter, Braun sent Alphamed a second default notice in February 1998, and rejected Alphamed's efforts to cure the default. In March 1998, Braun terminated the Agreement.

In April 1998, Alphamed commenced this breach of contract action in a Georgia superior court. Braun removed the case on the basis of diversity and asserted a counterclaim for the return of a $2 million deposit that it had paid to Alphamed upon the execution of the Agreement. Following extensive discovery,

3

the district court referred the case to a special master for an evidentiary hearing. After a two-week hearing, the special master found that Braun had rightfully terminated the Agreement and was entitled to the return of its $2 million deposit.

During the first of the three jury trials, the district court reduced the liability issues presented in the case to three questions, which it submitted to the jury as special interrogatories: (1) whether Alphamed was in substantial compliance in February 1998, when Braun served its second notice of default; (2) if not, whether Alphamed initiated steps to cure within the 30-day period following the notice of default; and (3) if so, whether Braun was unreasonable in deciding that Alphamed had not initiated reasonably satisfactory steps to cure its default within the 30-day period. The jury found that Alphamed was in substantial compliance when Braun served its second notice of default and, therefore, did not proceed to questions two and three. The jury awarded Alphamed $4.4 million in damages.

After the first trial, Braun moved for judgment as a matter of law and, alternatively, for a new trial. The district court granted this motion in August 2001, vacating Alphamed's judgment and entering judgment for Braun in the amount of $1.85 million. The district court further granted Braun's motion for a new trial in the event of vacatur on appeal after concluding that "the verdict was most probably due to the seriously improper closing argument by plaintiff's

counsel," Ben F. Easterlin IV. During the rebuttal portion of his closing argument, Easterlin was determined to introduce evidence of the pump's safety by demonstrating that he was personally willing to hook himself up to the pump. Even after the district court instructed him, then admonished him, not to introduce such evidence, Easterlin stated during his rebuttal that "[i]f this were not a safe pump, would I risk the future of my wife and three children by hooking myself up? This was a quality pump."

On appeal, we reversed the district court's entry of judgment as a matter of law. *Alphamed, Inc. v. B. Braun Med., Inc.*, No. 01-14662 (11th Cir. Sept. 30, 2002) ("*Alphamed I*"). In doing so, we stated that judgment as a matter of law would only have been appropriate in this case if there was no evidence sufficient to sustain a jury's verdict on any of the three special interrogatories. *Id.*, at *10 ("To find as a matter of law for Braun, . . . there must be no substantial evidence to support either the jury's verdict or its potential verdict for Alphamed as to [special interrogatories] two and three."). While we commented that "[i]t appears that substantial evidence exists to support the determination of 'substantial compliance' by the jury," we concluded that the sufficiency of evidence supporting the jury's potential verdict on the third interrogatory–concerning

5

whether Braun acted unreasonably in rejecting Alphamed's attempts to cure the alleged default–was "clearly dispositive." *Id.*, at \*11.

We also rejected the district court's contention that Alphamed sought future profits that were too speculative to recover, as opposed to verifiable contractual damages. *Id.*, at \*17-19. We noted that "[t]he Agreement sets forth specific quantity and price terms for the duration of the contract," and concluded that, "[i]n the event that Alphamed prevails in the new trial, recovery of [damages based on these specific quantity and price terms] is not speculative." *Id.*, at \*18.

Although we held that the grant of judgment as a matter of law was inappropriate, we affirmed the district court's grant of a new trial in light of Easterlin's thoroughly unprofessional conduct during his closing argument. While we chose not to sanction Easterlin, we commented that "[i]t is a sufficient rebuke to observe that in light of our decision today that had Easterlin not engaged in such conduct, he and his client might be enjoying a jury verdict in their favor rather than awaiting a new trial." *Id.*, at \*17.

On remand, the district court commenced a second trial, which ended in a mistrial after the jury failed to reach a verdict. The court then commenced the third jury trial in February 2003, which is the subject of this appeal. In addressing the liability issues presented, the court submitted two special interrogatories to the

jury that were identical in all material respects to the first and third interrogatories that it had submitted to the jury in the first trial: (1) whether Alphamed was in substantial compliance with the Agreement in February 1998; and, if not (2) whether Braun was unreasonable in deciding that Alphamed had not initiated reasonably satisfactory steps to cure its default within the 30-day period following the notice of default. Consistent with the result in the first trial, the jury found unanimously that Alphamed was in substantial compliance in February 1998, and did not proceed to the second issue.

With respect to Alphamed's damages, the district court submitted a special verdict form to the jury, on which the district court directed the jury to enter $17,867,001 for Alphamed's projected gross revenues. The court arrived at this figure by multiplying the quantity and price terms set forth in the Agreement, in accordance with our instruction in *Alphamed I* that Alphamed's recovery could be based on the assumption that the parties would have fully performed were it not for Braun's breach. *See id.*, at *18. The district court also asked the jury to determine whether or not Alphamed was entitled to prejudgment interest, but did not give the jury the opportunity to fix its value. Based on the jury's findings, the district court entered judgment for Alphamed and awarded Alphamed damages of $9,045,099 and $1,968,759 of prejudgment interest.

7

Braun once again moved for judgment as a matter of law. The district court granted Braun's motion in part, solely due to the insufficiency of evidence supporting the jury's determination of the "reasonably allocated overhead" deduction from Alphamed's recovery. The jury had fixed the deduction at $815,364, even though the undisputed testimony at trial projected Alphamed's overhead for the four-year contract term to be $4,529,085. The district court increased this deduction to preclude Alphamed from recovering costs that it would never incur.

In addition, the district court reduced its prejudgment interest calculation, after concluding that Alphamed was not entitled to interest on the $2 million that Braun had advanced to Alphamed prior to Braun's termination of the Agreement. In light of these adjustments, the district court directed an altered judgment in favor of Alphamed for $5,331,377 in damages and $1,067,081 in prejudgment interest.

The district court denied Braun's motion in all other respects. On the threshold issue of Braun's liability, the district court commented that "[w]hile the Court . . . remains of the opinion expressed in its prior order of August 2, 2001 [] as to the liability issues herein, now it is foreclosed from granting a judgment as a

8

matter of law on the liability issues by the opinion and judgment of the Court of

Appeals in [*Alphamed I*]."

## II. ISSUES[2]

1.  Whether the law of the case doctrine precluded judgment as a matter of law on

    the issue of Braun's contractual liability.

2.  Whether the district court erred in precluding the jury from calculating the

    "projected gross revenues" component of Alphamed's recovery.

3. Whether the district court erred in precluding the jury from calculating

    Alphamed's prejudgment interest.

## III. STANDARD OF REVIEW

We review *de novo* the district court's application of the law of the case

doctrine. *Field v. Mans*, 157 F.3d 35, 40 (1st Cir. 1998). We also review *de novo*

the district court's calculation of contractual damages and prejudgment interest

---

[2]In addition to these issues, Alphamed asks us to consider whether the district court erred by subtracting Braun's $2 million offset before calculating Alphamed's prejudgment interest, and by concluding as a matter of law that Alphamed could not recover overhead costs that it never incurred. Alphamed's arguments with respect to each of these issues are irreconcilable with the fundamental tenet of contract law that "'(a)n injured party can not be placed in a better position than he would have been in if the contract had not been breached.'" *Amalgamated Transit Union Local 1324 v. Roberts*, 434 S.E.2d 450, 452 (Ga. 1993) (quoting *Gainesville Glass Co. v. Don Hammond, Inc.*, 278 S.E.2d 182, 186 (Ga. Ct. App. 1981)); *see also Jefferson Randolph Corp. v. Progressive Data Sys., Inc.*, 553 S.E.2d 304, 308 (Ga. Ct. App. 2001), *rev'd on other grounds*, 568 S.E.2d 474 (Ga. 2002) ("[T]he claimant is not permitted to recover expenses never incurred, putting him in a better position than if the contract had been performed."). We thus conclude that Alphamed's arguments concerning these alleged errors are devoid of merit, and we need not discuss them further.

where the calculation is dependent upon the district court's construction of state law. *See Softball Country Club-Atlanta v. Decatur Fed. Sav. & Loan Ass'n*, 121 F.3d 649, 653 (11th Cir. 1997); *Venn v. St. Paul Fire & Marine Ins. Co.*, 99 F.3d 1058, 1066 (11th Cir. 1996).

## IV. DISCUSSION

*A. Whether the law of the case doctrine precluded judgment as a matter of law on the issue of Braun's contractual liability.*

Under the law of the case doctrine, both district courts and appellate courts are generally bound by a prior appellate decision in the same case.[3] *Venn*, 99 F.3d at 1063. The doctrine "is based on the salutary and sound public policy that litigation should come to an end." *White v. Murtha*, 377 F.2d 428, 431 (5th Cir. 1967).[4] If it not for the law of the case doctrine, "there would be no end to a suit

---

[3]The law of the case doctrine will bar us from reconsideration of an issue we have previously decided unless (1) our prior decision resulted from a trial where the parties presented substantially different evidence from the case at bar; (2) subsequently released controlling authority dictates a contrary result; or (3) the prior decision was clearly erroneous and would work manifest injustice. *Joshi v. Florida State Univ. Health Ctr.*, 763 F.2d 1227, 1231 (11th Cir. 1985). None of these exceptions bar the application of the doctrine in the instant case. While Braun argued in the district court that our holding in *Alphamed I* was clearly erroneous, Braun has abandoned this argument on appeal. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1114 n.1 (11th Cir. 1993). In a similar vein, Braun has waived its argument that the parties presented substantially different evidence in the first and third jury trials by failing to raise the issue prior to oral argument. *See Softball Country Club-Atlanta v. Decatur Fed. Sav. & Loan Ass'n*, 121 F.3d at 654 n.9.

[4]In *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), we adopted as binding precedent all decisions of the former Fifth Circuit rendered prior to October 1, 1981.

[because] every obstinate litigant could, by repeated appeals, compel a court to listen to criticisms on their opinions or speculate of chances from changes in its members." *Id.* (internal quotations omitted).

Braun urges us to conclude that the law of the case doctrine did not preclude the district court from granting Braun's motion for judgment as a matter of law because our discussion in *Alphamed I* relevant to the jury's verdict–addressing only the issue of Alphamed's substantial compliance with the Agreement–was dicta. Thus, Braun contends that the district court was free to analyze the sustainability of the jury's verdict, even though it was identical to the jury's verdict in *Alphamed I*.

In making this argument, however, Braun ignores that our holding in *Alphamed I* was that, "[t]o find as a matter of law for Braun, . . . there must be no substantial evidence to support either the jury's verdict *or its potential verdict for Alphamed as to [the reasonableness of Braun's conduct in rejecting Alphamed's attempts to cure after notice of default]*." *Alphamed I*, at \*10 (emphasis added). Braun concedes that we held in *Alphamed I* that the evidence was sufficient to sustain the jury's potential verdict on this secondary issue. Because the special interrogatory verdict form was materially identical in both trials, our holding in *Alphamed I* thus controls the outcome of this case. Accordingly, the district court

11

did not err in concluding that the law of the case doctrine precluded judgment as a matter of law on the issue of Braun's contractual liability, notwithstanding the fact that our discussion of the sufficiency of evidence supporting the jury's verdict was dicta.

*B.  Whether the district court erred in precluding the jury from calculating the "projected gross revenues" component of Alphamed's recovery.*

Pursuant to O.C.G.A. § 11-2-708(2), an aggrieved seller may recover "profit (including reasonable overhead) which the seller would have made from full performance by the buyer, . . . due allowance for costs reasonably incurred and due credit for payments or proceeds of resale."  Braun contends that the "profit" component of Alphamed's recovery is inflated because the special verdict form precluded the jury from considering whether Alphamed would not have been able to produce all 7,600 pumps called for in the Agreement, or whether the Agreement had been modified such that Alphamed's production expectations were reduced.

Although Braun's contention in this regard has some arguable merit in light of the jury's implicit finding that the quantity/time provisions of the Agreement had been modified, we specifically addressed the issue of whether Alphamed's recovery could be based on its full performance in *Alphamed I* in rejecting the district court's conclusion that Alphamed, as a start-up business, could not recover

12

"future profits" under Georgia law. *Alphamed I,* at \*17-19. Because we held in *Alphamed I* that Alphamed could recover contractual damages established by the "specific quantity and price terms" set forth in the Agreement if it prevailed at trial, the district court did not err in concluding that Alphamed's recovery could be based on the expectation of full performance.

*C. Whether the district court erred in precluding the jury from calculating prejudgment interest.*

Section 13-6-13 of the Official Code of Georgia Annotated provides that, "[i]n all cases where an amount ascertained would be the damages at the time of the breach, it may be increased by the addition of legal interest from that time until the recovery." The award of prejudgment interest under O.C.G.A. § 13-6-13 is a matter for the jury's discretion. *American Family Life Assurance Co. of Columbus, Ga. v. United States Fire Co.*, 885 F.2d 826, 835-36 (11th Cir. 1989). O.C.G.A. § 7-4-2(a)(1)(A) fixes the legal rate of interest for O.C.G.A. § 13-6-13 unliquidated contractual damages at seven percent unless the contract provides otherwise. O.C.G.A. § 7-4-2(a)(1)(A); *see Southern Water Techs., Inc. v. Kile*, 481 S.E.2d 826, 829 (Ga. Ct. App. 1997).

Braun contends that the district court should have permitted the jury to calculate Alphamed's prejudgment interest, and the few Georgia cases on point

13

arguably support Braun's contention. *See Southern Water Techs.*, 481 S.E.2d at

829 (vacating jury prejudgment interest calculation that was not supported by the

record); *see also Wheels & Brakes, Inc. v. Capital Ford Truck Sales, Inc.*, 307

S.E.2d 13, 15 (Ga. Ct. App. 1983) ("[I]t is proper for the court to instruct the jury

that where damages are unliquidated, interest at the legal rate may be awarded at

the jury's discretion."). Nonetheless, we conclude that the district court's error, if

any, was harmless because the legal rate of interest was determined by statute, and

the district court permitted the jury to determine whether or not to award

prejudgment interest and to calculate Alphamed's damages, which formed the

basis for the award. If the jury had properly performed the calculation, it would

have necessarily arrived at the exact same figure.

## V. CONCLUSION

As stated above, the law of the case doctrine is grounded in the salutary

public policy that all litigation should come to an end. This case exemplifies the

purpose underlying the doctrine. After three trials and two appeals, this case too

must come to an end.

Although we are not entirely unsympathetic to some of the arguments raised

by Braun in this appeal, the law of the case doctrine precludes us from

reconsidering the merits of issues that we resolved in *Alphamed I*. Because we

14

conclude that the district court properly applied the law of the case doctrine, and properly rejected the arguments that we did not address in *Alphamed I*, we affirm the district court's judgment.

**AFFIRMED.**