[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
January 6, 2006
THOMAS K. KAHN
CLERK

No. 04-11902
Non-Argument Calendar

_____

D. C. Docket No. 02-00110-CR-3-RV

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

BRIAN A. PUGH,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

**(January 6, 2006)**

Before CARNES, BARKETT  and PRYOR, Circuit Judges.

PER CURIAM:

Brian A. Pugh appeals his 220-month sentence for knowingly possessing a firearm and ammunition in violation of 18 U.S.C. §§ 922(g) and 924(c)(1)(C)(i) , imposed on remand after we vacated his original sentence. Pugh raises several issues on appeal. With respect to his conviction, Pugh argues that 18 U.S.C. § 922(g), upon which his convictions were based, is an unconstitutional exercise of Congress's Commerce Clause power under United States v. Lopez, 514 U.S. 549 (1995), both facially and as applied. Pugh also argues that the police and prosecutor engaged in misconduct that prejudiced his rights. Pugh further asserts that the indictment was defective because it impermissibly charged him for the same conduct in multiple counts; and that the district court should have severed the charges in the indictment for trial.

In addition, Pugh makes several arguments with respect to his sentence. First, Pugh contends that our finding in his prior direct appeal that possession of an unregistered firearm is a crime of violence under U.S.S.G. § 2K2.1 contradicts Stinson v. United States, 508 U.S. 36 (1993), and United States v. Johnson, 399 F.3d 1297, 1302 (11th Cir. 2005) (holding that possession of a firearm by a felon is not a crime of violence), and that the fact that a firearm is unregistered should not render the offense a crime of violence. Second, Pugh argues that the two counts of conviction should have been grouped together under U.S.S.G. § 3D1.2 because he

possessed one of the two firearms he was charged with possessing in Count 1 on the same day he was in possession of the ammunition he was charged with possessing in Count 2.  Third, Pugh argues that the district court erred in departing upward in his second sentencing hearing because the government did not provide notice that it was seeking an upward departure, as required by Fed. R. Crim. P. 32. Fourth, Pugh contends that the alleged threat he made to a probation officer at sentencing formed part of the court's basis for applying an upward departure constitutes double jeopardy because he was later tried and convicted in a separate proceeding for this action.  Fifth, Pugh contends that the district court impermissibly enhanced his sentence in retaliation against him for initiating a successful appeal.

Finally, Pugh challenges his sentence under United States v. Booker, 125 S.Ct. 738 (2005), contending that his objection to an obstruction of justice enhancement based on threats and attacks which had not been charged was sufficient to preserve a claim under Booker.  Pugh argues that the court committed constitutional Booker error by enhancing his sentence based on crimes for which he was not charged, and committed Booker statutory error by applying the guidelines in a mandatory fashion.  Alternatively, Pugh contends that his sentence of over 17 years' imprisonment for possession of one bullet and one caliber

3

handgun is unreasonable under <u>Booker</u>, and is inconsistent with the sentencing factors of 18 U.S.C. § 3553(a).

I.

After a jury trial verdict of guilt, the district court sentenced Pugh to a total of 228 months' imprisonment, to run consecutive to a previous 21-month term of imprisonment imposed in a separate case for Pugh's violation of the terms of his supervised release. On direct appeal, we found that the district court plainly erred by enhancing Pugh's sentence based on a prior conviction that was more than 15 years old, vacated his sentence, and remanded for resentencing. However, we rejected Pugh's other sentencing issues, including Pugh's argument that the district court should have grouped the offenses in the indictment, and that possession of an unregistered firearm was not a crime of violence. We also affirmed Pugh's conviction, finding that the alleged governmental misconduct was not plain error and that the district court did not abuse its discretion in failing to sever the two counts in the indictment for trial.

Upon remand, the district court held another sentencing hearing and imposed a total sentence of 210 months' imprisonment, departing upward from the guideline range on the grounds that it did not adequately reflect Pugh's criminal history or the extent of his obstruction of justice.

## II.

Pugh's arguments that 18 U.S.C. § 922(g) is an unconstitutional exercise of power under the Commerce Clause, that the government engaged in misconduct, that the indictment was impermissibly multiplicitous, and that the district court erred in severing his offenses for trial, are barred by the law of the case doctrine because this Court previously affirmed his convictions and remanded only for resentencing. Alphamed, Inc. v. B. Braun Medical, Inc., 367 F.3d 1280, 1285-86 (11th Cir. 2004); Luckey v. Miller, 929 F.2d 618, 621 (11th Cir. 1991). The law of the case doctrine similarly bars his arguments that the counts of his offense should have been grouped at sentencing, and that possession of an unregistered firearm was not a crime of violence because this Court explicitly considered and rejected those arguments in his previous appeal.

## III.

Turning to Pugh's remaining arguments, we conclude that they are meritless. On this record, we find that Pugh received adequate notice that an upward departure could be imposed through the Presentence Investigation Report ("PSI"). We also conclude that it is not a violation of the Double Jeopardy Clause, in departing upward, to consider the escalating nature of a Pugh's offenses, including his threat to a probation officer. We also reject his claim that the district court

5

enhanced his sentence in retaliation for initiating a successful appeal.

Finally, we conclude that although Pugh sufficiently preserved his <u>Booker</u> objection, Pugh cannot show that this error affected his substantial rights because there is no indication in the record that the court would have imposed a different sentence under an advisory guideline scheme. To the contrary, the sentencing judge properly considered the 18 U.S.C. § 3553(a) factors and his extensive comments during the resentencing proceeding establish beyond a reasonable doubt that this judge would not have given this defendant a lesser sentence had the guidelines been advisory at the time of sentencing. In explaining its actions, the court stated:

> THE COURT: Well, I find that the circumstances of this case are very unusual, but paramount in all sentencing is a consideration of goals of sentencing and those goals have always been and the sentencing guidelines have not altered the fact that the punishment is what it's all about as well as the specific and general deterrence. That is to deter the particular defendant from committing other crimes and harming the public or harming anyone and general deterrence as to how this applies to other people in similar circumstances who may be tempted to try to do the same thing. And for that reason, sentencing always encompasses that is the ultimate result of all of the calculations and the factors that have to be considered under the sentencing guidelines. Ultimately, you get to the point of what is a fair sentence under all the circumstances under the totality of the circumstances and taking into account all the policy statements and guidelines as well as the factors set out by statute.

The court also noted that the defendant had not just made a false statement during

6

his testimony but had made 35 false statements while testifying. The court stated:

> The sentence that I have imposed is an upward departure from the guideline range as calculated in the presentence investigation report to take into account the seriousness of this matter, [and] the defendant's extensive criminal history, which is underrepresented by the Category Five....
>
> I find that the sentence itself meets the sentencing goals of punishment as well as a specific and general deterrence. ...because I've identified a number of aggravating factors that warrant a departure.
>
> . . . .
>
> I note also that two of the defendant's prior convictions are for the same offense that he's being sentenced in this case. So that this is the third conviction for possession of a firearm by a convicted felon. The first conviction arose from the U.S. district court for the Southern District of Western Virginia and he was sentenced on September 27, 1988 to a term of 37 months. Upon release from that conviction, apparently, and another conviction from the U.S. District Court for the Southern District of West Virginia, he was again sentenced on August 17, 1992 to a term of 96 months imprisonment for possession of a firearm by a convicted felon. And, of course, this is the third possession of a firearm by a convicted felon, a situation and circumstance that certainly, if not Congress, the Sentencing Commission should take into account by adjusting the punishment schedules accordingly to reflect the seriousness of the third conviction for this type of offense.
>
> I also note that the separate and distinct obstruction of justice conduct that's not reflected in the mere two-level adjustment has to do with the threats and battery that I've already identified occurring during the course of his trial proceedings here in Pensacola.
>
> The threats to the supervising deputy U.S. marshal, the assistant federal public defender and the battery upon his cell mate indicate a violent pattern of escalating criminal conduct, as Mr. Pugh himself

7

has acknowledged an inability to control his own emotions and to spontaneously act, which coupled with the possession of firearms is a serious and very real danger to the public.

None of these factors have been adequately taken into consideration in the guidelines calculations to reflect the seriousness of either the past criminal conduct or the likelihood that the defendant will commit other crimes in the future.

. . . .

Several prior convictions noted in paragraphs 50, 51, 52 and 53 of the presentence investigation report are simply not used in computing the criminal history category and are similar to the instant offense and/or violent offenses including receiving stolen property, arson, possession of a dangerous and deadly weapon and attempting breaking and entering.

Two of these convictions occurred while he was on parole. If these offenses had been countable, the total criminal history points would have increased by nine, to a total of 19, or almost double the amount of ten that actually was included.

. . . .

I further find that the information set out in the report is determined to be reliable, and I find that the term of incarceration I have imposed is sufficient to punish Mr. Pugh for his criminal conduct, while serving as general and specific deterrence as the policy of sentencing requires.

In imposing the sentence, I've also considered the factors set out by statute in Title 18, United States Code, Section 3553, as well as the Sentencing Commission's Policy Statements and Guidelines.

We are satisfied that the court would not have imposed a different sentence under an advisory guideline scheme. Moreover, the court properly considered the

8

18 U.S.C. § 3553(a) factors, and we conclude that Pugh's sentence is reasonable under the circumstances articulated by the sentencing judge.

**AFFIRMED**