[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 05-16964

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 13, 2007
THOMAS K. KAHN
CLERK

D.C. Docket No. 97-03924-CV-AMS

JERRY GREENBERG,

Plaintiff-Appellee,

versus

NATIONAL GEOGRAPHIC SOCIETY,
a District of Columbia corporation,
NATIONAL GEOGRAPHIC ENTERPRISES, INC.,
a corporation, MINDSCAPE, INC.,
a California corporation,

Defendants-Appellants.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(June 13, 2007)

Before BARKETT, KRAVITCH, Circuit Judges, and TRAGER,* District Judge.

_____

* Honorable David G. Trager, United States District Judge for the Eastern District of New York sitting by designation.

TRAGER, District Judge:

This case presents the question of whether § 201(c) of the Copyright Act[1] accords a magazine publisher a privilege to produce a digital compilation that contains exact images of its past magazine issues. This case comes before this Court for a second time and requires a determination whether an intervening Supreme Court case, New York Times Co. v. Tasini, 533 U.S. 483 (2001), abrogates an earlier decision in this case, Greenberg v. Nat'l Geographic Soc'y, 244 F.3d 1267 (11th Cir. 2001) ("Greenberg I"), such that we are bound to overrule Greenberg I, which held that the digital compilation was not privileged.

## I. PROCEDURAL HISTORY

National Geographic Society ("the Society"), National Geographic Enterprises, Inc. ("NGE") and Mindscape, Inc. ("Mindscape") (collectively, "National Geographic" or "defendants") appeal from a final order and judgment of

---

[1] 17 U.S.C. § 201(c) was added to the copyright statute as part of the 1976 amendments to the 1909 Act, and provides:

> **(c) Contributions to Collective Works.**--Copyright in each separate contribution to a collective work is distinct from copyright in the collective work as a whole, and vests initially in the author of the contribution. In the absence of an express transfer of the copyright or of any rights under it, the owner of copyright in the collective work is presumed to have acquired only the privilege of reproducing and distributing the contribution as part of that particular collective work, any revision of that collective work, and any later collective work in the same series.

2

the District Court for the Southern District of Florida entering judgment as a matter of law against them on the issue of liability and following a jury trial solely on the issues of damages and willfulness. Jerry Greenberg ("Greenberg") and his wife Idaz Greenberg filed a complaint and amended complaint alleging that defendants infringed Greenberg's copyrights in photographs that originally ran in several issues of National Geographic magazine when defendants released "The Complete National Geographic" ("CNG"), a thirty-disc CD-ROM set that reproduces each monthly issue of National Geographic magazine from its first issue in 1888 through the late twentieth century. Defendants filed a motion to dismiss[2] on the ground that the Society had a privilege to publish a revision of the originally licensed works under 17 U.S.C. § 201(c). The district court granted the motion. That decision was reversed by this Court in Greenberg I.

Twenty days after entry of this Court's mandate in Greenberg I, defendants filed answers, raising affirmative defenses for the first time. Pursuant to its understanding of this Court's mandate, the district court entered judgment for plaintiffs and, on motion by plaintiffs, struck defendants' answers. The district court referred the issues of damages and willfulness to a magistrate judge, who

---

[2] The complaint alleged five counts, three of which related to the CNG. Defendants filed an answer to the non-CNG-related counts, which were subsequently dismissed with prejudice on Dec. 28, 1999.

conducted a jury trial. The jury returned a verdict of willfulness and awarded plaintiff the maximum statutory damages for willful copyright infringement: $400,000, or $100,000 for each occurrence.[3]

Three months after Greenberg I was decided, the Supreme Court decided Tasini, which elucidated a test for the application of the § 201(c) privilege. Subsequently, the Second Circuit, deciding a case brought by other photographers and authors whose works were included in the CNG, held that the CNG was privileged under § 201(c) and found that Greenberg I was "contrary to" the Supreme Court's subsequent decision in Tasini. Faulkner v. Nat'l Geographic Enters. Inc., 409 F.3d 26 (2d Cir.), cert. denied, ___ U.S. ___, 126 S.Ct. 833 (2005).

## II. BACKGROUND

Greenberg is a freelance photographer whose photographs were published in the January 1962, February 1968, May 1971 and July 1990 issues of National Geographic magazine. In each instance, after their initial publication in the magazine, Greenberg regained ownership of the copyrights in the photographs he had originally assigned to National Geographic. For decades, the Society has

---

[3] The maximum statutory damage award for willful infringement has since increased to $150,000 for each work that is infringed. 17 U.S.C. § 504(c).

reproduced back issues of the magazine in bound volumes, microfiche and microfilm. In 1997, National Geographic produced the CNG, a thirty-disc CD-ROM set containing each monthly issue of the magazine for the 108 years from 1888 through 1996 – a collection of some 1200 issues of the magazine. The CNG is an image-based reproduction of the magazine; every page of every issue appears exactly as it did in the original paper version. The CNG does not provide a means for the user to separate the photographs from the text or to otherwise edit the pages in any way.

The CNG also contains a computer program, created by Mindscape, which compresses and decompresses the images and allows the user to search an electronic index. The CNG further contains an introductory sequence that begins when the user inserts the disc into a drive. This sequence starts with a Kodak advertisement, which is followed by a moving display of the Society's logo and theme song and then a 25-second segment in which ten images of actual magazine covers from past issues (including Greenberg's January 1962 cover photograph) digitally fade into one another.

The Society registered its copyright of the CNG in 1998. On the registration form, the Society claimed that the work had not been registered before, but indicated that it was a "compilation of pre-existing material primarily

pictorial," to which a "brief introductory audiovisual montage" had been added. Greenberg I, 244 F.3d at 1270.

Greenberg filed suit in December 1997, alleging, inter alia, that the CNG infringed his copyrights in his individual photographs. Before answering, defendants moved to dismiss those claims, or, in the alternative, for summary judgment. The district court, relying on the reasoning in the district court opinion in Tasini v. New York Times Co., 972 F. Supp. 804 (S.D.N.Y. 1997), granted summary judgment in defendants' favor on the copyright claims. The district court noted that § 201(c) grants the publisher of a collective work a copyright on the collective work as a whole, while the author of an individual contribution to a collective work receives a copyright in that individual contribution. Because the CNG reproduced the entire collective work as a whole, the district court held that the CNG was privileged under § 201(c) and that defendants did not infringe Greenberg's copyrights in the individual photographs.

On March 11, 2001, this Court reversed. Greenberg I, 244 F.3d 1267. Greenberg I separately analyzed what it considered the three components of the CNG: the introductory sequence ("Sequence"), the digitally reproduced issues of the magazine themselves ("Replica"), and the computer program ("Program"). Id. at 1269. This Court assumed, without deciding, that the Replica was privileged

6

under § 201(c), but refused to apply the privilege to the Program or the Sequence, which it characterized as separately copyrightable elements. Id. at 1272-73. Taking all three components together, this Court held that the CNG is a new product "in a new medium, for a new market that far transcends any privilege of revision or other mere reproduction envisioned in § 201(c)." Id. at 1273. The Court rejected National Geographic's defense that use of the 1962 photograph in the Sequence was a fair use or de minimus. Id. at 1274-75. In its conclusion, the Court remanded the case, and stated that "[u]pon remand, the court below is directed to enter judgment on these copyright claims in favor of Greenberg." The Court further directed that, "[u]pon remand, the district court should ascertain the amount of damages and attorneys fees that are due as well as any injunctive relief that may be appropriate."

Defendants moved for rehearing, noting that there was no basis for this Court to direct the entry of judgment in Greenberg's favor on liability, as none of National Geographic's defenses other than § 201(c) had been adjudicated. While that petition was pending, this Court, sua sponte, issued a corrected opinion deleting the sentence directing the district court to enter judgment on the copyright claims in Greenberg's favor and amending the direction to assess damages and attorneys' fees to read: "Upon remand, the district court should ascertain the

7

amount of damages and attorneys fees that are, <u>if any</u>, due as well as any injunctive relief that may be appropriate." <u>Greenberg I</u>, 244 F.3d at 1275-76. This Court subsequently denied rehearing. Defendants then filed a petition for a writ of certiorari by the Supreme Court, which was denied. <u>Nat'l Geographic Soc'y v. Greenberg</u>, 534 U.S. 951 (2001).

### III.  DISCUSSION

On June 25, 2001, after this Court's decision in <u>Greenberg I</u>, the Supreme Court handed down its decision in <u>Tasini</u>. <u>Tasini</u> involved the use of individual freelance contributions in electronic databases that removed the individual contributions from the context of the original collective work. <u>Tasini</u>, 533 U.S. at 487. The <u>Tasini</u> court held that § 201(c) did not apply there because the works had been removed from their original context. <u>Id.</u> at 488.

In particular, the Supreme Court focused on how the articles were "presented to, and perceptible by, the user of the [d]atabases." <u>Id.</u> at 499. Finding that the databases presented the articles "clear of the context provided either by the original periodical editions or by any revision of those editions," the Supreme Court concluded that it could not "see how the [d]atabase perceptibly reproduces and distributes the article 'as part of' either the original edition or a 'revision' of that edition." <u>Id.</u> at 499-500.

8

The Supreme Court distinguished the electronic databases at issue in Tasini from microfilm and microfiche, which present an individual freelance contribution in the context of the original collective work, and implied, without directly stating, that such collections are privileged under § 201(c). Id. at 501-02. The Supreme Court noted that in the case of microforms, "articles appear . . ., writ very small, in precisely the position in which the articles appeared in the newspaper." Id. at 501. The Supreme Court further observed that it is "[t]rue [that] the microfilm roll contains multiple editions, and the microfilm user can adjust the machine lens to focus only on the article, to the exclusion of surrounding material. Nonetheless, the user first encounters the article in context." Id. at 501. The Supreme Court affirmed that "transfer of a work between media does not alter the character of that work for copyright purposes," a concept known as "media neutrality." Id. at 502.

Subsequent to Tasini, on March 4, 2005, the Second Circuit affirmed in relevant part a summary judgment entered by the District Court for the Southern District of New York in favor of the Society in a copyright action in which the plaintiffs, like Greenberg, were freelance photographers and authors whose photographs and/or written works originally appeared in various issues of National

9

Geographic Magazine.[4]  Faulkner, 409 F.3d 26.  The Faulkner plaintiffs sued for copyright infringement following republication of their work in the CNG.  Of the six cases that were filed nationwide concerning the CNG, only Greenberg was not filed in, or transferred to, the Southern District of New York.  Faulkner, 409 F.3d at 32-33.  The district court in Faulkner refused to apply the doctrine of collateral estoppel to give preclusive effect to Greenberg I and found the CNG to be a privileged revision under § 201(c).  Id. at 30.  The Court of Appeals for the Second Circuit agreed with the district court, holding that the Tasini decision "represented an intervening (post-Greenberg I) change in law precluding the application of collateral estoppel, and [that] the CNG is a revision for Section 201(c) purposes."  Id.

Although Tasini was decided on different facts from Faulkner and Greenberg, the Faulkner court found it telling that the Supreme Court had given "tacit approval to microfilm and microfiche as permissible Section 201(c) revisions, by contrasting that method of reproduction with the databases," at issue in Tasini, which allowed a user to retrieve an article in isolation, removed from its original context.  Faulkner, 409 F.3d at 35.  The Faulkner court distinguished the

---

[4] Unlike Greenberg, none of the Faulkner plaintiffs had works that were used in the Sequence.

10

analysis in Greenberg I, which had focused on whether the three components identified as comprising the CNG - the Sequence, the Replica and the Program - were themselves copyrightable. Id. at 36. The Faulkner court described Greenberg I as holding that "if a subsequent work contains independently copyrightable elements not present in the original collective work, it cannot be a revision privileged by Section 201(c)." Id. at 37. In contrast, "the Supreme Court held in Tasini that the critical analysis focused on whether the underlying works were presented by the particular database in the context of the original works.... [I]t also strongly implied, by contrasting the database to microfilm, that microfilm would constitute a privileged revision." Id. The Faulkner court concluded:

> In our view, the Tasini approach so substantially departs from the Greenberg [I] analysis that it represents an intervening change in law rendering application of collateral estoppel inappropriate.

Id. On the merits, the Faulkner court held that, "because the original context of the [m]agazines is omnipresent in the CNG and because it is a new version of the [m]agazine, the CNG is a privileged revision." Id. at 38. The Faulkner court additionally held that the Sequence was a revision that did not "substantially alter the original context," and, therefore, did not affect the CNG's status as a privileged revision. Id.

Under the prior panel precedent rule, a panel of this Court is bound to follow an earlier panel decision addressing the same issue of law unless it has been overruled by this Court sitting en banc or by the Supreme Court. See Glazner v. Glazner, 347 F.3d 1212, 1214 (11th Cir. 2003) (citing Saxton v. ACF Indus., Inc., 254 F.3d 959, 960 n.1 (11th Cir. 2001) (en banc)); Lufkin v. McCallum, 956 F.2d 1104, 1107 (11th Cir. 1992) ("A panel of this Court may decline to follow a decision of a prior panel if such action is necessary in order to give full effect to an intervening decision of the Supreme Court of the United States."). The exception to the prior panel precedent rule is clear-cut when a subsequent Supreme Court case expressly overrules a prior panel decision, and it is no less applicable "when the rationale the Supreme Court uses in an intervening case directly contradicts the analysis this Court has used in a related area, and establishes that this Court's current rule is wrong." Johnson v. Kmart Corp., 273 F.3d 1035, 1063 (11th Cir. 2001) (Barkett, J., concurring) (emphasis in original).

Tasini creates a new, post-Greenberg I framework for analyzing the § 201(c) privilege. Under the Tasini framework, the relevant question is whether the original context of the collective work has been preserved in the revision. Clearly, the Replica portion of the CNG preserves the original context of the magazines, because it comprises the exact images of each page of the original magazines.

12

Similarly, the Program is transparent to the viewer and does not alter the original context of the magazine contents. See Tasini, 533 U.S. at 499 ("In determining whether the Articles have been reproduced and distributed 'as part of' a 'revision' of the collective works in issue, we focus on the Articles as presented to, and perceptible by, the user of the Databases.").

Thus, the two remaining issues center on the Sequence. First, does the addition of the Sequence so alter the Replica that the CNG as a whole is no longer a privileged revision of the original magazines? And second, is the Sequence itself privileged under § 201(c)? As to the first question, we agree with the Second Circuit and hold that the addition of the Sequence does not extinguish the privilege that attaches to the Replica. The addition of the Sequence to the Replica portion of the CNG amounts to 25 seconds of "new" material that has been appended to some 1200 intact issues of the magazine. For guidance in determining whether this added material destroys the privilege, we turn to the legislative history of § 201(c). The House Report gives the following clarification:

> [T]he last clause of the subsection, under which the privilege of republishing the contribution under certain limited circumstances would be presumed, is an essential counterpart of the basic presumption. Under the language of this clause a publishing company could reprint a contribution from one issue in a later issue

13

> of its magazine, and could reprint an article from a 1980 edition of an encyclopedia in a 1990 revision of it; the publisher could not . . . revise the contribution itself or include it in a new anthology . . . or an entirely different magazine or other collective work.

H.R. Rep. No. 94-1476, at 122-123 (1976), reprinted in 1976 U.S.C.C.A.N. 5659, 5738. It is clear from the encyclopedia analogy that the addition of new material to a collective work will not, by itself, take the revised collective work outside the privilege, as a revision of an encyclopedia would almost by definition include entries on new topics. The question is whether the new material so alters the collective work as to destroy its original context.

The addition of the Sequence to the Replica presents the inverse of an example mentioned in Tasini, when it noted:

> The Database no more constitutes a "revision" of each constituent edition than a 400-page novel quoting a sonnet in passing would represent a "revision" of that poem.

Tasini, 533 U.S. at 500. Just as the addition of 400 pages of prose to a sonnet does not constitute a "revision" of the sonnet, the addition of a preface to a 400-page anthology would not transform the book into a different collective work. So it is here. The Sequence is nothing more than a brief visual introduction to the Replica, which acts as a virtual cover for the collection of magazines. Just as a new cover on an encyclopedia set would not change the context of the entries in

14

the encyclopedia, the Sequence in no way alters the context in which the original photographs (as well as the articles and advertisements) were presented.

As to the second question, National Geographic does not contend that the Sequence itself comes within the ambit of the § 201(c) privilege.[5] It concedes that Greenberg's 1962 cover photograph was used out of context in the introductory montage[6] and notes that Greenberg I's rejection of its de minimus and fair use defenses remains binding. Accordingly, we follow Greenberg I on this point and hold that the Sequence is not privileged under § 201(c). As discussed below, it does not necessarily follow, however, that defendants are liable for infringement of the 1962 cover photograph.

National Geographic also argues that the district court erred by precluding it from ever raising, in any court, any other defenses to copyright liability. The district court granted plaintiff's motion to strike defendants' answers: (1) because it understood this Court's mandate in Greenberg I to not "permit reopening of the

---

[5] The Faulkner district court did not reach this question, as the Sequence did not use any of the Faulkner plaintiffs' contributions. Faulkner v. Nat'l Geographic Soc., 294 F. Supp. 2d 523, 543 n.94 (S.D.N.Y. 2003).

[6] An argument could be made, however, that the Sequence did, in fact, use the covers in context. Just as the original cover provided an introduction to the issue of the magazine to which it was attached, the Sequence recycled previous National Geographic Magazine covers as a virtual cover for (or introduction to) the digital compendium of all of the magazine issues in the CNG.

15

liability issues in this case;"[7] and (2) because the answers were "untimely"[8] and

defendants "waived the right to file an answer"[9] by first moving to dismiss or, in

the alternative, for summary judgment under § 201(c).  Regarding the first ground,

to justify its perceived "mandate" to strike National Geographic's answer, the

district court quoted from the portions of Greenberg I that were later amended .  In

short, National Geographic argues that the district court over-read the Greenberg I

opinion by holding that it precluded defendants from contesting liability on any

ground. Greenberg responds that the district court correctly interpreted the

mandate as precluding it from entertaining any defense to infringement (including

those not raised in the motion to dismiss).  Greenberg then proceeds to refute the

four defenses that National Geographic raised in its later-stricken answer,[10]

attempting to demonstrate the futility of those defenses in the absence of a record.

We review de novo whether a district court correctly applied a mandate

handed down by this Court.  See Alphamed, Inc. v. B. Braun Med., Inc., 367 F.3d

---

[7] June 11, 2002 Order Granting, in Part, Defs.' Mot. for Additional Order of Reference; Denying Defs.' Cross-Mot. For Enlargement of Time; and Granting Pls.' Mot. to Strike Defs.' Answers, at 5.

[8] Id. at 6.

[9] May 29, 2002 Order Denying Defs.' Mot. for Interlocutory Appeal, at 6.

[10]  Those defenses were (1) contractual authorization, (2) that the 1909 Act governs some of the photographs, (3) failure to state a claim and (4) laches and estoppel.

16

1280, 1285 (11th Cir. 2004) (reviewing de novo application of law of the case doctrine); Piambino v. Bailey, 757 F.2d 1112, 1120 (11th Cir. 1985) (explaining that a mandate simply requires a specific application of the law of the case doctrine). We agree with defendants that the district court over-read the mandate.[11]

Regarding the second ground given by the district court – untimeliness – National Geographic points out that it followed the procedure set forth in Fed. R. Civ. P. 8(c) and 12(b) which permits filing a motion to dismiss before an answer. After entry of the mandate in Greenberg I, National Geographic filed its answer within 20 days. Because Rule 12(a)(1) provides 20 days after service of the complaint to file an answer, National Geographic argues that its answer was timely.

Greenberg asserts that the answer is untimely, because when he first filed his complaint, defendants waited until 15 days after service of the complaint to request additional time to file their motion to dismiss. He argues that, therefore, only 5 days of the 20-day period to answer were tolled by the request for additional time, and any post-mandate answer would have to have been filed within 5 days to be timely. Greenberg cites no case that supports this proposition,

_____

[11] In any event, the mandate of Greenberg I is moot in light of today's ruling.

17

and we find his position on timeliness meritless.

Under the Federal Rules, a defendant may file a motion under Rule 12 before filing an answer to a complaint. National Geographic followed the procedure set forth in the Federal Rules in making its motion to dismiss prior to filing an answer and should not have suffered the ultimate penalty of being precluded from presenting its other defenses to copyright liability for doing so. See Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency, 216 F.3d 764, 788 & n.45 (9th Cir. 2000), aff'd, 535 U.S. 302 (2002) (noting that a defendant need only present on a motion to dismiss those defenses that are susceptible to judgment on the pleadings, and may plead any other defenses in a later-filed answer). Regarding timeliness, National Geographic is correct that defendants have 20 days under the Federal Rules to file an answer after service of a complaint, although no time period is specified in the Federal Rules for filing an answer where a district court grants a pre-answer dispositive motion but an appellate court subsequently reverses.[12] Because National Geographic followed

---

[12] The Rules do set forth a time to respond to a complaint in an analogous situation: where a district court denies a motion made under Rule 12, a defendant must answer within 10 days after notice of the court's action. Fed. R. Civ. P. 12(a)(4)(A). Neither party discusses the applicability of Rule 12(a)(4)(A) here, and we have discovered no case that addresses the issue. Because the applicability of Rule 12(a)(4)(A) to an appellate court's reversal of a district court's grant of a Rule 12 motion is unclear, defendants should not be held to its 10-day time limit for filing an answer.

the procedures set forth in Rules 8 and 12, and because the Rules set no time limit for answering a complaint following a reversal of summary judgment, we hold that National Geographic's answer filed within 20 days after our mandate was timely. Accordingly, the district court's grant of the motion to strike the answer is vacated.

In light of today's holding that the Replica and Program portions of the CNG are privileged under § 201(c) and the fact that defendants have filed an answer with defenses that have not yet been adjudicated to the copyright claims concerning the Sequence, the willfulness verdict is also vacated.

## IV. CONCLUSION

We conclude that the Supreme Court's decision in <u>Tasini</u> established a new framework for applying the § 201(c) privilege that effectively overrules the earlier panel decision in this case. Under the <u>Tasini</u> framework, we conclude that the Replica and Program portions of the CNG are privileged under § 201(c). We further conclude that the district court erred in striking defendants' answer and vacate that order. We also vacate the verdict of willful infringement and the damage award. The case is remanded to the district court for adjudication of the remaining claims and defenses.

**REVERSED** and **REMANDED**.